UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARION WARE, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:13-cv-00980 |
| | § | |
| PATRICK DONOHOE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Pending before the Court are the separately-filed motions for summary judgment urged by the defendants', National Association of Letter Carriers, AFL-CIO ("NALC")[1] and NALC Branch 283 (the "Branch")[2] (collectively, the "NALC Defendants" or "the Union"), (Dkt. No. 28) and Patrick Donahoe, in his capacity as the Postmaster General of the United States Postal Service (the "Postal Service") (all together, "the defendants") (Dkt. No. 29). The plaintiff, Marion Ware (the "plaintiff"), has failed to file a response to the motions and the time for doing so has elapsed. Thus, pursuant to this Court's local rules, the plaintiff's "[f]ailure to respond will be taken as a representation of no opposition." S.D. Tex L.R. 7.4. Accordingly, based on the motions, the pleadings, the undisputed facts, the record and the applicable law, the Court determines that the defendants' motion for summary judgment should be **GRANTED**.

**II.    FACTUAL BACKGROUND**

On or about October 25, 1985, the plaintiff began working as a city letter carrier at the Postal Service's North Shepherd location in Houston, Texas. During her tenure with the Postal

---

[1] NALC serves as the collective bargaining representative of the city letter carriers employed by the Postal Service and is a party, along with the Postal Service, to the collective bargaining agreement ("CBA") governing the terms and conditions of the city letter carriers' employment.
[2] The Branch is NALC's local Houston affiliate.

Service, she served as a dues-paying member of the NALC and the Branch, working in various capacities such as union steward, advocate, and as a board member of NALC's state organization, the Texas State Association of Letter Carriers. On or about January 23, 2012, the plaintiff became ill and ceased reporting to work for weeks, not returning until on or about April 10, 2012.

Upon her return, she was presented with a Notice of Removal, dated April 4, 2012, for "Failure to be Regular in Attendance (AWOL)." (*See* Dkt. No. 28, Ex. 2 at A148 – 50). This notice charged her with having been absent without leave for more than two months, since January 23, 2012, and with having failed to provide acceptable documentation explaining her absence. (*Id.*) Specifically, the notice alleged that: (1) on February 23, the Postal Service had mailed her a notice to either return to work or, within five days, provide acceptable documentation for her absence; (2) on March 14, it sent a directive to her instructing her to appear at an investigative interview concerning her absence and further warning her that her failure to respond and/or report could result in corrective action, including her removal; and (3) the plaintiff failed to report to the investigative interview or to notify Postal Service personnel that she could not attend. (*Id.*) On April 10, 2012, the plaintiff signed the Notice of Removal, acknowledging receipt of it. (*Id.*)

The plaintiff contends that immediately upon her return to work she attempted to challenge the Notice of Removal under the grievance procedure in effect between the Postal

Service and the NALC.[3] Specifically, she contends that immediately upon her return to work she met with her supervisor, Kathy Derry, in an Informal Step A grievance meeting concerning the Notice of Removal issued to her. (*Id.*) Armando Ortiz, a union steward who worked at the North Shepherd location, represented her at the grievance meeting. (*See* Dkt. No. 28, Pl.'s Depo. at A41 - 43). Ortiz presented a host of compelling arguments on the plaintiff's behalf protesting the removal notice including, *inter alia*, arguing that: (a) the plaintiff's removal was punitive and without just cause; (b) the plaintiff was being subjected to disparate treatment; (c) the plaintiff had adequately documented the reasons for her absence; (d) the plaintiff had notified management during her absence; and (e) the removal was untimely. (*See Id.* at A53 – 55). Nevertheless, despite Ortiz's numerous arguments, Derry denied the plaintiff's grievance at the meeting. The plaintiff admits that she did not recall requesting that Ortiz file a written appeal to proceed to the next step in the grievance procedure--a Formal Step A--and the record is devoid of any evidence suggesting that an appeal was ever filed. (*See Id.* at A58). In any event, the plaintiff testified in her deposition that she believed the Notice of Removal to be unjustified and expected the Postal Service to unilaterally withdraw it. (*See Id.* at A57 - 58).

At some point after the Informal Step A meeting, Ortiz transferred to another post office. Prior to his transfer, however, Ortiz informed the plaintiff that the Postal Service was offering her a "last chance" settlement agreement, which would have permitted her to remain employed

---

[3] In this case, Article 15 of the CBA sets forth a multi-step grievance--arbitration procedure governing the parties' dispute. (*See* Dkt. No. 28, Ex. 8 at A176 - 88). The first step, referred to as Informal Step A, consists of a discussion concerning the grievance between the employee and/or the union steward and the employee's immediate supervisor which takes place within fourteen days of the date on which the employee first learned or might reasonably have been expected to learn of its cause. (*See Id.*, Ex. 8 at A176; Art. 15.2(a) Informal Step A). If no resolution of the grievance is reached at Informal Step A, the union is permitted to file a written appeal to the next step, called Formal Step A, within seven days of the Informal Step A discussion. (*See Id.*, Ex. 8 at A177; Art. 15.2(c) Informal Step A). If a grievance remains unresolved after the Formal Step A meeting, the union may appeal to Step B, where a joint labor-management dispute resolution team reviews the grievance. (*See Id.*, Ex. 8 at A178; Art. 15.2 Step B).

with the Postal Service, but would have also given the Postal Service the right to remove her immediately if she incurred a certain number of disciplinary infractions within a certain period of time. The plaintiff concedes that she never advised Ortiz that she wanted to accept the agreement. (*See Id.* at A63).

Subsequently, after being informed that Ortiz had been "bidded out" and was no longer available to assist her, the plaintiff chose to have Keith Jones, another union steward at the North Shepherd location, represent her in connection with her removal. (*See Id.* at A63 - 65). On September 12, 2012, Jones sent the plaintiff a text message informing her that the Postal Service wanted to settle the grievance over her removal pursuant to a "last chance" agreement. (*See Id.* at A72; *see also* Ex. 6 at A164, ¶ 27). Thereafter, the plaintiff sent Jones a text message telling him that while she wanted him to attempt to settle her grievance, she wanted a provision in the agreement providing that if her absence from work was later deemed to be approved leave under the Family and Medical Leave Act ("FMLA"), she would have the right to revisit whether she should have received any discipline at all. (*See Id.* at A72 – 74). Jones responded, via text, that the only offer from the Postal Service was a last chance agreement, without any additional language about FMLA leave. (*See Id.* at A74; *see also* Ex. 6 at A164, ¶ 29). There is no evidence in the record that the plaintiff ever agreed to accept the offered last chance agreement without the FMLA leave provision. In fact, the plaintiff testified that she did not recall ever communicating to Jones that she would accept the offered last chance agreement without the FMLA leave provision included. (*See* Dkt. No. 28, Pl.'s Depo. at A75 - 76). Ultimately, for reasons unexplained, the Postal Service's August 29, 2012 removal of the plaintiff was not processed until October 1, 2012. (*See* Dkt. No. 28, Ex. 7 at A169).

On October 22, 2012, the plaintiff filed an unfair labor practice charge against the Branch with the National Labor Relations Board ("NLRB"), alleging that "[s]ince about July 1, 2012, the Union failed to properly represent [her] in the processing of a grievance over her letter of removal." (Dkt. No. 28, Ex. 13 at A195). She further alleged that "[o]n October 5, 2012, the Union unlawfully refused to process a grievance on [her behalf] concerning her termination." (*Id.*) In a letter dated February 8, 2013, the NLRB dismissed the plaintiff's charge, concluding that it found no basis for determining that the Branch had breached its duty of fair representation. (*See* Dkt. No. 28, Ex. 11 at A190).

On April 5, 2013, the plaintiff commenced the instant action alleging that her employment was wrongfully terminated by the Postal Service in violation of the CBA and that the NALC Defendants breached their duty of fair representation owed to her in failing to pursue meritorious grievances on her behalf.

The defendants now move for a summary judgment on the plaintiff's claims.

### III.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

The plaintiff has not filed a response to the defendants' motions for summary judgment. In accordance with this Court's local rules, responses to motions are due within twenty-one days unless the time is extended. S.D. Tex. L.R. 7.3. A failure to respond is "taken as a representation of no opposition." S.D. Tex L.R. 7.4. Notwithstanding the plaintiff's failure to file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). To this end, the defendants, as "movant[s,] ha[ve] the burden of establishing the absence of a genuine issue of material fact and, unless [they] ha[ve] done so, the court may not grant the motion[s], regardless of whether any response was filed." *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is appropriate, a district court may accept as undisputed the facts set forth in the motions. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (internal citations omitted).

## IV. ANALYSIS AND DISCUSSION

### A. The Plaintiff's Claim for Breach of the Duty of Fair Representation

As a threshold matter, the NALC Defendants maintain that the plaintiff's claim is untimely under the six-month statute of limitations period applicable to duty of fair representation claims. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171 – 72, 103 S. Ct. 2281, 76 L. Ed.2d 476 (1983); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 480 (5th Cir. 1991). "The statutory period begins to run when the plaintiff either knew or should have known of the injury itself, i.e., the breach of duty of fair representation, rather than of its manifestations." *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989) (citing *Farr v. H.K. Porter Co.*, 727 F.2d 502, 505 (5th Cir. 1984)); *see also Barrow*, 932 F.2d at 480 ("The statute of limitations period began to run when Barrow discovered that the [collective bargaining agreement] was violated.").

As set forth above, the plaintiff alleges that "[s]ince about July 1, 2012, the Union failed to properly represent [her] in the processing of a grievance over her letter of removal." (Dkt. No. 28, Ex. 13 at A195). Thus, based on the plaintiff's *own* allegations, she admittedly knew or should have known of the NALC Defendants' purported breach of their duty of fair representation by July 1, 2012, more than nine months prior to the time the instant action was filed. Therefore, the NALC Defendants are entitled to judgment as a matter of law on the plaintiff's breach of duty of fair representation claim as it is time-barred.

Even assuming that the plaintiff's duty of fair representation claim against the NALC Defendants is not time-barred, the plaintiff has, nevertheless, failed to establish that the NALC Defendants' breach of their duty of fair representation was arbitrary, discriminatory, or in bad faith. In this case, the plaintiff's claim arises from the Postal Service's termination of her for

failure to maintain regular attendance (AWOL). The plaintiff contends that the Postal Service wrongfully terminated her employment in violation of the CBA and that the NALC Defendants breached their duty of fair representation by failing to pursue meritorious grievances on her behalf in connection with her removal. Specifically, in her complaint, she alleges that the NALC Defendants are "guilty of gross nonfeasance in arbitrarily and capriciously refusing to process [her] grievances and in not protesting [her] wrongful removal." (Dkt. No. 1 at ¶ 47). She further alleges that the NALC Defendants' "arbitrary, discriminatory and bad faith failure and refusal . . . to properly and timely represent [her] with regard to [her] grievances . . . represents a blatant and willful breach of [their] duty to fairly represent [her]." (*Id.* at ¶ 48.) The NALC Defendants, in contrast, assert that based on the undisputed facts contained in the record, the plaintiff's breach of duty of fair representation claim fails as a matter of law. This Court agrees.

"Section 301 of the [Labor Management Relations Act, 29 U.S.C. § 185,] provides an individual employee with a federal cause of action against his employer for breach of a collective bargaining agreement." *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 – 88 (5th Cir. 1988) (citing *Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S. Ct. 267, 9 L. Ed.2d 246 (1962); *see* 29 U.S.C. § 185(a)). An employee's suit or cause of action against the union for breach of the duty of fair representation is implied from the statutory scheme of the National Labor Relations Act. *See Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir.), *cert. denied*, 479 U.S. 1008, 107 S. Ct. 648, 93 L. Ed.2d 704 (1986) (citing *DelCostello*, 462 U.S. at 165 – 65, 103 S. Ct. at 2290). Given the intricate association between the enforcement of a collectively-bargained agreement and the duty of fair representation, the two causes of action are "inextricably interdependent" and are often referred to as "hybrid § 301/fair representation" claims. *Bache*, 840 F.2d at 287 – 88

(citing *DelCostello*, 462 U.S. at 164 – 65, 103 S. Ct. at 2290 – 91). In *Landry v. Cooper/T. Smith Steverdoring Co., Inc.*, the Fifth Circuit described the interdependent relationship as follows:

> The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. Further, he is bound by the procedure's result *unless* he proves the union breached its duty of fair representation.

*Landry*, 880 F.2d at 850 (citing *Daigle*, 794 F.2d at 977) (citations omitted) (emphasis added)).

In *Daigle*, the Fifth Circuit further reiterated that:

> To prevail against either the [employer] or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*Daigle*, 794 F.2d at 977 (citing *DelCostello*, 462 U.S. at 166, 103 S. Ct. at 2291) (citations omitted).

The union, nonetheless, retains significant discretion when processing grievances for its members. *Landry*, 880 F.2d at 852 (citing *Cox v. C.H. Masland & Sons*, 607 F.2d 138, 142 (5th Cir. 1979); *Turner v. Air Transp. Dispatchers Assoc.,* 468 F.2d 297, 299 (5th Cir. 1972)). As such, an individual "employee has no absolute right to have his grievance taken to arbitration . . . or to any other level of the grievance process." *Landry*, 880 F.2d at 852 (internal citations omitted). The Supreme Court has pronounced that "the duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed.2d 242 (1998) (citing *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S. Ct. 903, 910, 17 L. Ed.2d 842 (1967)). "In other words, a union breaches the duty of fair representation when its conduct toward a member

of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez*, 525 U.S. at 44, 119 S. Ct. 292 (citing *Vaca*, 386 U.S. at 190, 87 S. Ct. 903). The union may not, however, "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion" but must investigate the merits of an employee's grievance in good faith. *Landry*, 880 F.2d at 852 (internal citations omitted). A showing of mere negligence, mistaken conduct or a lack of enthusiasm or perfection by the union is insufficient to support a claim of breach of the duty of fair representation. *Id.* Thus, the essential inquiry in such cases becomes "whether a union's conduct was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process." *Landry*, 880 F.2d at 851 (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 - 69, 96 S. Ct. 1048, 1058, 47 L. Ed.2d 231 (1976)). The Court's substantive examination of the union's performance must be highly deferential, analogous to judicial review of legislative decisions. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78, 111 S. Ct. 1127, 1135 – 36, 113 L. Ed.2d 51 (1991).

When viewing the record evidence in the light most favorable to the plaintiff as this Court is required to do, the Court determines that the plaintiff's conclusory allegations, that the NALC Defendants are guilty of gross nonfeasance in processing her grievance and that their conduct represents a flagrant breach of their duty to fairly represent her, are without merit, and do not create a factual dispute as to whether the NALC Defendants' conduct breached their duty of fair representation. More specifically, this Court finds no support in the record for the plaintiff's assessment of the NALC Defendants' conduct as stated in her complaint. The facts, as presented in the record, indicate that the NALC Defendants handled the plaintiffs' grievance in a reasonable, rational and non-arbitrary manner.

Indeed, based on the plaintiff's *own* admissions, the NALC Defendants did not act arbitrary, discriminatory, or in bad faith in representing her. In fact, when questioned about the NALC Defendants' performance in handling her grievance, the plaintiff acknowledged, during her deposition, that Armando Ortiz, the union steward who represented her at the Informal Step A meeting with her supervisor made several compelling arguments on her behalf protesting the Postal Service's issuance of the Notice of Removal. More importantly, she conceded that she was satisfied with Ortiz's representation at the meeting. (*See* Dkt. No. 28, Pl.'s Depo. at A53 – 54). She further testified that she did not know whether Ortiz had filed a written appeal to Formal Step A on her behalf after her grievance was denied by her supervisor, but, nevertheless, admitted that she did not recall ever asking him to do so. (*See Id.* at A58).

In addition, the plaintiff testified that she deemed the notice of removal to be unjustified and expected the Postal Service to unilaterally withdraw it. (*Id.* at A57 - 58). She further admits that she was advised on at least two occasions, by Ortiz and Jones, that the Postal Service was willing to settle her grievance by offering her a "last chance" agreement, which would have permitted her to remain employed, but she never actually accepted either of the agreements. (*See* Dkt. No. 28 at A60 - 64; A75 - 77). Moreover, she concedes that she had no reason to believe that the NALC Defendants harbored any bad feelings or hostility toward her. (*Id.* at A64). Furthermore, the record establishes that in the absence of an appeal to Formal Step A by the plaintiff, there were no additional avenues that the NALC Defendants could pursue on the plaintiff's behalf in accordance with the CBA's grievance procedure. (*See* Dkt. No. 28, Ex. 8). Thus, the plaintiff has failed to sufficiently plead or present supporting evidence suggesting that the NALC Defendants' conduct in handling her grievance was so far outside a "wide range of reasonableness" that their performance could be perceived as irrational and/or arbitrary. *See*

*O'Neill*, 499 U.S. at 66, 111 S. Ct. at 1129 (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S. Ct. 681, 686, 97 L. Ed. 1048 (1953) (A union's actions are arbitrary "only if, in light of the factual and legal landscape, it can be fairly characterized as so far outside of a 'wide range of reasonableness' . . . that it is wholly 'irrational' or 'arbitrary'"). The fact that the plaintiff, now in hindsight, disagrees with how the NALC Defendants handled her case is insufficient to raise a fact issue on her breach of duty of fair representation claim against them. *See Landry*, 880 F.2d at 852 (noting that the processing of an employee's grievance in a less than enthusiastic or imperfect manner does not constitute a breach of the duty of fair representation).

Under these circumstances, the NALC Defendants cannot be said to have performed in a manner that was arbitrary, discriminatory or in bad faith with regard to their handling of the plaintiff's grievance or to have undermined the fairness or integrity of the grievance process. Moreover, the plaintiff has tendered no evidence to refute and/or raise a genuine issue of material fact with respect to the NALC Defendants' duty of fair representation. While the law is clear that a court must draw all reasonable inferences in favor of the nonmoving party, the nonmoving party cannot establish a genuine issue of material fact merely by resting on conclusory allegations, but instead "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d at 405 (internal citations omitted). Hence, because the plaintiff has not established the existence of a genuine issue of material fact, the NALC Defendants are entitled to a summary judgment on her breach of the duty of fair representation claim. *See Lee v. Cytex Indus., Inc.*, 460 F.3d 673, 679 (5th Cir. 2006) (affirming dismissal of the parent union with respect to a breach of duty of fair representation claim where the local chapter of the union was found to not have breached such a duty).

**B. The Plaintiff's Claim for Breach of the Collective Bargaining Agreement.**

The Postal Service maintains that it is entitled to a summary judgment on the plaintiff's claim for breach of the CBA because the plaintiff cannot prove that it violated the CBA. It further contends that the plaintiff has failed to demonstrate that the NALC Defendants' conduct in representing her was arbitrary, discriminatory or in bad faith and, thus, the plaintiff's claim against it for violation of the CBA also fails. This Court agrees. Because the plaintiff has failed to establish the "indispensable predicate" for her breach of the CBA claim against the Postal Service, to wit, breach of the NALC Defendants' duty of fair representation, the Postal Service is entitled to a summary judgment. *See Thomas v. LTV Corp.*, 39 F.3d 611, 621 – 22 (5th Cir. 1994) (reasoning that "[t]he 'indispensable predicate' for a section 301 action against an employer, based on a violation of a collective-bargaining agreement, is the union's breach of its duty of fair representation"); *see also Landry*, 880 F.2d at 851 (internal citations omitted) (noting that a plaintiff must establish his breach of duty of fair representation claim against the union in order to prevail against the union *and* his employer; "the 'indispensable predicate' for a § 301 action in this situation is a fair representation claim against the union.").

**V. CONCLUSION**

Based on the foregoing analysis and discussion, the defendants' motions for summary judgment are **GRANTED**.

It is so **ORDERED**.

SIGNED on this 9th day of February, 2015.

_____
Kenneth M. Hoyt
United States District Judge